UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

FILED VIA MAIL
SEP 1 9 2005
CLERK U.S. BANKRUPTCY
ORLANDO, FL

IN RE: ) Case No. 00-09185-abb
Howard Stapleton and Patricia Stapleton )
)
DEBTOR(S) )

APPLICATION FOR ORDER DIRECTING PAYMENT OF FUNDS TO
CREDITOR/CLAIMANT PURSUANT TO 11 U.S.C. § 347 AND 28 U.S.C. §§ 2041-2044

B-Line, LLC successor in interest to First Nat'l dba as Wachovia Bankcard (the "Claimant") a claimant in the captioned case respectfully requests as follows:

1. Claimant was a creditor of the Debtors and was due to receive and the trustee did, in fact, make a distribution from the estate to the Claimant in the amount of exactly $97.60. The Claimant was not located and the funds of the Claimant were paid into the Court pursuant to 11 U.S.C. § 347.

2. Pursuant to 11 U.S.C. § 347 and 28 U.S.C. §§ 2041-2044, the Claimant requests that the Court issue an order directing payment to the Claimant and that payment be made in care of the party set forth below. Claimant's current address is as follows: 2101 Fourth Avenue, Suite 1030, Seattle, WA 98121, Mail Stop 530.

WHEREFORE, Claimant requests that the Court issue an order directing payment of all funds held by the Court for the Claimant in this case and for such further and other relief as is just and appropriate.

B-Line, LLC successor in interest to
First Nat'l dba as Wachovia Bankcard
(Fed. ID# 91-1795067)

_____
By: B-Line, LLC
By: Edward J. Barton
Chief Financial Officer
2101 Fourth Avenue, Suite 1030
Seattle, WA 98121, Mail Stop 530
(206) 239-1989

## AFFIDAVIT OF SERVICE

I hereby certify that on _____9/15/05_____ I have mailed a true and correct copy of the foregoing APPLICATION FOR ORDER DIRECTING PAYMENT OF FUNDS TO CREDITOR/CLAIMANT PURSUANT TO 11 U.S.C. § 347 AND 28 U.S.C. §§ 2042 ET. SEQ. to:

United States Attorney
Attn: Civil Process Clerk
400 N. Tampa Street, Suite 3200
Tampa, FL 33602-4708

_____
Ann Tham
Legal Assistant

# Certificate of Service

I hereby certify that on ____9-15-05____ I mailed a true and correct copy of the APPLICATION FOR ORDER DIRECTING PAYMENT OF FUNDS TO CREDITOR/CLAIMANT, AFFIDAVIT OF SERVICE, AFFIDAVIT, POWER OF ATTORNEY, OFFICER'S CERTIFICATE OF AUTHORITY, all exhibits, and the ORDER DIRECTING PAYMENT OF FUNDS TO CREDITOR/CLAIMANT to the following parties:

Howard Stapleton and Patricia Stapleton
5900 Altec Road
Orlando, FL 32808

US Attorney
ATTN: Civil Procedures Clerk
400 N. Tampa Street, Suite 3200
Tampa, FL 33602

Andrea A. Ruff
Attorney at Law
1205 Mount Vernon Street
Orlando, FL 32803

Laurie K. Weatherford
Trustee
Post Office Box 3450
Winter Park, FL 32792

U.S. Trustee
135 West Central Blvd, Suite 620
Orlando, FL 32801

_____
Ann Tham
Legal Assistant

For mail purposes only:
(For MDFL TAM USBC - 1 original, 1 copy, & 2 extra copies of the Order with Self-Addressed Stamped Envelope)

U.S. Bankruptcy Court
**MIDDLE DISTRICT OF FLORIDA**
Attn: Ms. Alison Hale
135 W. Central Blvd., Suite 950
Orlando, FL 32801

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

IN RE: ) Case No. 00-09185-abb
Howard Stapleton and Patricia Stapleton )
)
DEBTOR(S) ) AFFIDAVIT
)

I, Edward J. Barton, hereby certify that the following statement is true and correct:

I state my knowledge of state law requirements in the State of Florida for being a personal representative of B-Line, LLC successor in interest to First Nat'l dba as Wachovia Bankcard.

_____
Edward J. Barton
Chief Financial Officer

SUBSCRIBED AND AFFIRMED before me this 15th day of September, 2005.

_____
NOTARY PUBLIC in and for the
State of Washington, residing at
Seattle.
My commission expires 1/1/2008



B-LINE, LLC

**EDWARD J. BARTON, CFA, CPA**
Chief Financial Officer

2101 Fourth Avenue
Suite 1030
Seattle, Washington 98121-2339

Phone: 206-239-1989
Fax: 206-239-1958
Email: edwardb@blinellc.com

EXHIBIT A

# OFFICER'S CERTIFICATE

1. The undersigned is the Secretary of B-Line, LLC, a Washington limited liability company (the "Company").

2. Edward J. Barton is the Company's Chief Financial Officer and is authorized by the Company to execute applications for payments of unclaimed funds to be filed with the various U.S. Bankruptcy Courts.

DATED:

_____
Louis H. Treiger, Secretary

SUBSCRIBED AND AFFIRMED to before me this 3rd day of March, 2005.

_____
Notary public in and for the State of Washington
Residing at Seattle.
My commission expires 1/1/2008.


EXHIBIT B

 #532

## CONFIDENTIAL AGREEMENT FOR SALE
## AND PURCHASE OF BANKRUPTCY RECEIVABLES

THIS AGREEMENT ("Agreement") is made and entered into as of September 8, 2003, by and between Bank One, NA ("Seller"); and B-Line, L.L.C., a Washington limited liability company ("Buyer"). Seller and Buyer (sometimes collectively referred to as "Parties" and singularly referred to as a "Party") agree as follows:

1. Facts:

1.1. Seller owns certain receivables in which the debtors have filed for bankruptcy under Title 11 of the U.S. Bankruptcy Code described on Exhibit "1" of this Agreement ("Receivables").

1.2 Seller desires to sell, and Buyer desires to purchase, all of the Seller's right, title and interest in and to those receivables of Debtors identified in Exhibit "1" to this Agreement (the "Receivables").

2. Agreement to Sell and Purchase:

On the terms and conditions in this Agreement, Seller shall sell and Buyer shall purchase: (i) the right to recover the Receivables from the Debtors; and (ii) all of Seller's right, title and interest in the Receivables and all claims (including "claims" within the meaning of Section 101(5) of the Bankruptcy Code) and causes of action against Debtors or any other person or entity arising under, from, on or in connection with the Receivables ("Purchased Rights"). For purposes of this Agreement, "Receivables" shall not include and the Buyer does not assume any obligations arising from or related to acts or omissions by Seller relating to Creditor-Debtor relationships, including but not limited to any obligations to vendors or any other entity with respect to Debtors' purchases which give rise to the Receivables (collectively referred to as "Retained Obligations").

3. Purchase Price and Cutoff Date:

The purchase price of the Receivables is ("Purchase Price"), which shall be paid by Buyer to Seller on the closing date (as defined below) in federal funds immediately available in Seattle, Washington.

4. Cooperation:

4.1. From the date of full execution of this Agreement until the second anniversary of this Agreement, the Seller and the Buyer shall fully and promptly cooperate in all reasonable respects to fulfill the Parties' obligations under this Agreement; provided, however, Seller shall continue to remit payments received on account of the Receivables until the fifth anniversary of this Agreement.

4.2. Seller shall make available to Buyer, all of the Seller's then current personnel who have actual knowledge germane to Receivables, at reasonable times and on reasonable notice, for the purpose of answering any reasonable questions Buyer may have concerning the Receivables.

4.3. Buyer shall pay all reasonable out-of-pocket costs and expenses incurred in connection with such appearances, including by way of example only, transportation, lodging and food, and the employees' wages, benefits and payroll taxes.



EXHIBIT C

17.8. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the law governing choice of law.

IN WITNESS WHEREOF, the Parties have signed this Agreement as of the date set forth in the first paragraph of this Agreement.

SELLER:  
BANK ONE, NA

By: *[signature]*  
Janet A. Gigeous  
Its/Its: Vice President

Date: _____

BUYER:  
B-Line, L.L.C.

By: *[signature]*  
Michael L. Basile  
Chief Investment Officer

Date: 9/8/03

EXHIBIT C

7



# National Information Center
## Federal Reserve System

Institution Search | *Institution History | Organization Hierarchy | Financial & Performance Re

Who has an Institution Acquired?

*What Happened to an Institution?

| | |
|---|---|
| NAME: | FIRST USA BANK, NATIONAL ASSOCIATION |
| ADDRESS: | 201 WALNUT STREET |
| CITY: | WILMINGTON |
| STATE: | DE |
| ZIP CODE: | 19801 |
| COUNTRY: | UNITED STATES |

| | |
|---|---|
| INSTITUTION TYPE: | COMMERCIAL BANK |
| REGULATOR: | OFFICE OF THE COMPTROLLER OF THE CURRENCY |
| INSURANCE: | FDIC/BIF |
| TOP HOLDER: | BANK ONE CORPORATION |
| FDIC CERTIFICATE #: | 24503 |
| ACTIVITY: | COMMERCIAL BANKING |

CURRENT STATUS: FIRST USA BANK, NATIONAL ASSOCIATION HAS BEEN RENAMED TO 201 WALNUT BRANCH

Listed below is the selected institution history, sorted by date. You can view additional information for an institution by selecting that institution. Data were updated as of April 20, 2005.

| | | | |
|---|---|---|---|
| FIRST USA BANK, NATIONAL ASSOCIATION | RENAMED TO | BANK ONE, DELAWARE, NATIONAL ASSOCIATION | ON 09/30/2002 |

EXHIBIT  D

COPY

CONFORMED COPY

EXHIBIT

# PURCHASE AND SALE AGREEMENT

AMONG

FIRST USA BANK, NATIONAL ASSOCIATION,

THE FIRST NATIONAL BANK OF ATLANTA

AND

WACHOVIA CORPORATION

DATED AS OF APRIL 17, 2002

PURCHASE AND SALE AGREEMENT, dated as of April 17, 2002 (this "Agreement"), among First USA Bank, National Association (the "Bank"), The First National Bank of Atlanta d/b/a Wachovia Bank Card Services (the "Purchaser") and Wachovia Corporation, a North Carolina corporation (the "Parent").

RECITALS

A. THE BANK. The Bank is a national banking association headquartered in Wilmington, Delaware.

B. THE PURCHASER. The Purchaser is a national banking association headquartered in New Castle, Delaware. The Purchaser is a wholly owned subsidiary of the Parent.

C. THE CREDIT CARD ACCOUNTS. As of April 8, 2001, the Purchaser entered into an agreement to sell certain credit card accounts and related assets and liabilities to the Bank, which agreement was amended and restated as of July 25, 2001 (the "Original Purchase and Sale Agreement"). As of April 8, 2001, the Purchaser, the Bank and certain of the Bank's Affiliates also entered into a principal and agent bank joint marketing agreement pursuant to which the Purchaser and its Affiliates would offer credit cards issued by the Bank and bearing the "Wachovia" brand to retail customers, which agreement was amended and restated as of July 25, 2001 (the "Original Joint Marketing Agreement"). On September 1, 2001, the Purchaser notified the Bank of its intent to terminate the Original Joint Marketing Agreement and to repurchase certain accounts as provided in the Original Joint Marketing Agreement.

D. THE PURCHASE AND ASSUMPTION. Subject to the terms and conditions of this Agreement, the Purchaser intends to: (1) in accordance with the Original Joint Marketing Agreement, purchase from the Bank certain assets that were sold to the Bank pursuant to the Original Purchase and Sale Agreement and assume related liabilities and (2) immediately sell such assets and related liabilities to MBNA America Bank, N.A. (the "Subsequent Purchaser") pursuant to a Purchase and Sale Agreement of even date herewith between the Purchaser and the Subsequent Purchaser (the "Subsequent Purchaser Agreement"). Without in any way impairing the obligations of the Purchaser to repurchase the Accounts pursuant to the Original Joint Marketing Agreement, or the rights of the Bank thereunder and hereunder, it is the expectation of the parties to this Agreement that the Closing will occur simultaneously with the closing of the Subsequent Purchaser Agreement.

E. SOLE TRANSACTION. The Closing of this Agreement represents the sole occasion on which the Bank is obligated to sell to the Purchaser and the Purchaser is obligated to purchase from the Bank accounts and related assets, including accounts classified as "Callable Accounts" pursuant to the terms of, the Original Joint Marketing Agreement.

F. INTERIM PROCESSING AGREEMENT. In connection with this Agreement, the Bank and the Purchaser or, at the Purchaser's request, the Subsequent Purchaser, intend to enter into an interim processing agreement in the form of Annex A (the "Interim Processing Agreement").

NOW, THEREFORE, in consideration of the premises, and of the mutual representations and agreements contained in this Agreement, the parties agree as follows:

ARTICLE 1
DEFINITIONS

Section 1.1. Definitions of Certain Terms.

(a) In this Agreement, the following terms are used with the meanings assigned below:

"Account Agreement" means an agreement (including related disclosure) between the Bank and a Person or Persons under which an Account is established and Credit Card(s) is/are issued to or on behalf of such Person or Persons.

"Accounts" means all Credit Card accounts, excluding Impaired Accounts, (1) purchased by and assigned to the Bank pursuant to the Original Purchase and Sale Agreement that were classified as "Callable Accounts" (or for which should have been classified as "Callable Accounts", and are identified on Schedule A), in accordance with the methodology set forth on Schedule 1.1(a) of the Original Joint Marketing Agreement, or (2) originated by the Bank under the branch marketing program conducted under an Approved Marketing Plan, adopted pursuant to Section 3.3 of the Original Joint Marketing Agreement; provided, however, that for purposes of determining the Accounts, the Purchaser's Affiliates shall mean only those Affiliates existing as of April 8, 2001.

"Account Documentation" means all existing records and data relating to the Accounts, other than Retained Account Documentation, whether on paper, microfilm, microfiche, magnetic tape, computer disk or in any other form, but only in the media in which such records and data are maintained by or on behalf of the Bank, including, without limitation, (1) Credit Card applications, (2) Account Agreements, (3) transaction information, (4) periodic statements, (5) payment and

- 2 -

EXHIBIT E

IN WITNESS WHEREOF, this Agreement has been executed on behalf of each of the parties hereto as of the day and year first above written.

FIRST USA BANK, NATIONAL ASSOCIATION

By /s/ Ray Fischer
Name: Ray Fischer
Title: Executive Vice President and Chief Financial Officer

THE FIRST NATIONAL BANK OF ATLANTA

By /s/ Robert V. Burton
Name: Robert V. Burton
Title: Senior Vice President

WACHOVIA CORPORATION

By /s/ Robert V. Burton
Name: Robert V. Burton
Title: Executive Vice President

---

Section 10.9. *Public Announcement.* Except for any notice that is required by any applicable Requirement of Law or that the Purchaser, the Bank or the Subsequent Purchaser is reasonably required to disclose to any nationally recognized rating agency (in which event the disclosing party will use reasonable best efforts to cause such rating agency to provide assurances that it will preserve the confidentiality of the information disclosed to it), each of the Purchaser and the Bank agrees that neither it nor any of its Affiliates will, and the Purchaser will cause the Subsequent Purchaser and its Affiliates not to, issue a press release or make any other public statement, other than the press release attached as Annex E, with respect to the transactions contemplated by this Agreement without the prior written consent of the other Parties, which consent will not be unreasonably withheld or delayed.

Section 10.10. *Third-Party Beneficiaries.* Nothing in this Agreement, expressed or implied, will confer on any Person, other than the parties hereto or their respective successors, any rights, remedies, obligations or liabilities; provided that the provisions of Article IX will inure to the benefit of the Indemnified Parties.

Section 10.11. *Guarantee.* The Parent hereby irrevocably guarantees the full and punctual payment when due and performance of all obligations of the Purchaser and its permitted assigns under this Agreement.

- 45 -

NY12332:301420

EXHIBIT <span>(l)</span>

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:00-bk-09185-ABB

IN RE:
    HOWARD STAPLETON
    PATRICIA STAPLETON

    Debtor(s).
_____/

REPORT OF STANDING CHAPTER 13 TRUSTEE

COMES NOW, Laurie K. Weatherford, Trustee, and respectfully shows that, pursuant to orders dismissing cases, orders of conversion, and orders of distribution, as shown below, she has made distribution of all monies received. All checks have cleared with the exception of the following:

| Check No. | Amount | Claimant Name & Address |
|---|---|---|
| 0853376 | $ 97.60 | FIRST NAT'L DBA WACHOVIA BANKCARD P.O. BOX 14009 ATLANTA GA 30324 |

1. That the distribution(s) mailed to the above-listed Claimants at the address(es) listed above have either been returned by the United States Postal Service marked "Forwarding Time Expired/Unable to Forward" or the Trustee has stopped payment on all outstanding checks.

2. Those checks which were undeliverable by the United States Postal Service are in the Trustee's files.

3. Pursuant to the provisions of 11 U.S.C., Section 347,


EXHIBIT F

these funds are now being turned over to the Court.

4. That the Trustee has attached hereto check(s) totaling $ 97.60 which is payable to Clerk, U.S. Bankruptcy Court/Court Registry.

5. That those Claimant(s) which are entitled to these funds are listed above at their address as listed in the Court's records.

6. A copy of this notice and the original check has been sent to the Financial Administrator, U.S. Bankruptcy Court, 801 North Florida Avenue, Suite 727, Tampa, FL 33602-3899.

Respectfully submitted on this 28th day of Jan, 2005.

/S/ Laurie K. Weatherford
Laurie K. Weatherford, Trustee
P.O. Box 3450
Winter Park, FL 32790-3450
Telephone: (407) 648-8841
Facsimile: (407) 648-2665

EXHIBIT F